THE MAINE BAPTIST MISSIONARY CONVENTION *vs.* THE CITY OF PORTLAND.

Cumberland, 1875.—March 1, 1876.

*Tax. Definition of "charitable institutions." Words.*

The purpose and design of the plaintiffs, who are incorporated by this state, being the promulgation and diffusion of Christian knowledge and intelligence, through their agency as an institution of domestic missions, their organization falls within the description of "charitable institutions," the property of which is exempted from taxation by the statutes of this state.

ON FACTS AGREED.

ASSUMPSIT to recover some $1200, assessed for taxes for 1872, 1873 and 1874, on two stores in Portland devised to the plaintiffs by the late Byron Greenough. The taxes were paid by the

plaintiffs under protest that the property was exempt.  The only point in controversy is the question of exemption.

The plaintiffs were incorporated in 1867 by the consolidation of the Maine Missionary Society and the Maine Baptist Convention, the former incorporated in 1823 for the purpose of diffusing Christian knowledge, and the latter in 1830, to cultivate Christian acquaintance, to communicate intelligence respecting the state of religion, and to gather statistics of the denomination.  The new corporation succeeded to all the property, powers, privileges and duties of the two bodies; and has hitherto successfully performed all the functions and prosecuted the objects entrusted to the parent corporations by pecuniary means derived solely from donations.

*G. F. Emery,* for the plaintiffs, made an elaborate argument.

*T. B. Reed,* for the defendants, submitted without argument.

PETERS, J.  It is plain enough that the property of the plaintiffs should not have been assessed.  Our statute of exemption from taxation is very broad in its terms, more so perhaps than that of any other state.  It embraces "the real and personal property of all literary institutions, and the real and personal property of all benevolent, charitable and scientific institutions incorporated by this state."  It may be difficult to say what a "benevolent" institution is, if it differs from one that is merely charitable.  *Saltonstall* v. *Sanders,* 11 Allen, 446.  *Chamberlain* v. *Stearns,* 111 Mass., 267.  The main purpose and design of the organization of the plaintiffs, seem to be the promulgation and diffusion of Christian knowledge and intelligence through their agency as an institution of domestic missions.  There can be no doubt that the plaintiffs fall within the description of charitable institutions intended by the statute.  The word "charity," as found in our decisions and statutes, "is not to be taken in its widest sense, denoting all the good affections which men ought to bear to each other, nor in its restricted and usual sense, signifying relief to the poor, but is to be taken in its legal signification, as derived chiefly from the statute of 43 Eliz., c. 4.  Those purposes are deemed charitable which are enunciated in that act, or which by analogy are deemed

within its spirit and intendment." Bou. Law. Dic., Charities, and cases there cited. It has been repeatedly decided that missionary societies, foreign or domestic, are, in a legal sense, charitable institutions. *Bartlet* v. *King*, 12 Mass., 537. *Sohier* v. *The Wardens, &c., of St. Paul's Church*, 12 Metc., 250. *First Universalist Society in North Adams* v. *Fitch*, 8 Gray, 421. *Jackson* v. *Phillips*, 14 Allen, 539. *Fairbanks* v. *Lamson*, 99 Mass., 533. *Going* v. *Emery*, 16 Pick., 107. *Tappan* v. *Deblois*, 45 Maine, 122. *Preachers' Aid Society* v. *Rich*, id., 552. *Everett* v. *Carr*, 59 Maine, 325. No other statutory provisions apply to this case. The provisions of c. 6, § 6, clause 4, and clause 8 of § 14, relate to local parishes, and not to an institution such as the plaintiffs are described to be.	*Defendants defaulted.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.