FERRY BEACH PARK ASSOCIATION OF UNIVERSALISTS

*vs.*

CITY OF SACO.

York.    Opinion May 11, 1928.

137

*Strout & Strout*, for appellant.
*John P. Deering*, City Solicitor, for appellee.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, BASSETT, PATTANGALL, JJ.

STURGIS, J.    Appeal under R.S., Chap. 10, Sections 77-82, from the refusal of the assessors of the City of Saco to abate the tax of $699.14 assessed for the year 1925 upon the real estate of the appellant.    The case is certified to this Court upon Report for rendition of such judgment as the legal rights of the parties require.

The Ferry Beach Park Association of Universalists was incorporated by certificate dated November 20, 1909, under Chap. 62 of the Revised Statutes.    The purposes of the Corporation, as stated in its certificate of organization, are "religious, educational, moral and social, viz: THE GENERATING OF MISSIONARY POWER THROUGHOUT THE UNIVERSALIST CHURCH, and for the furtherance of its principal purpose, the following purposes, viz:

1.    To carry on religious, educational and social institutes, lectures and concerts and to conduct services of a religious nature and of moral character.

2.    To erect and maintain a hotel or hotels for the conveniences of its members and guests and to engage in all business incidental to and essential to such erection and maintenance and in all business requisite for the health and welfare of its members and guests while there resident."

The history of this Association since incorporation indicates that its activities have been in substantial accord with the purposes for which it was given charter. Primarily it is a Missionary Society, carrying on along lines of its own election, the diffusion and inculcation of the Christian religion. The fact that it carries on social and vacational activities along with its educational and devotional meetings does not deprive it of this primary character. If the stern and rigid limitations of Puritanism are relaxed to permit the inclusion of some of the recreational pleasures of life in the gatherings of this Association, none the less these are but incidental to the main purposes, promoting and renewing interest it may be, but clearly subordinate to its general aim and purpose of "developing the missionary power of the Universalist Church."

Secondary also are the business affairs of the Association. Its charter authorizes the erection and maintenance of hotels for the accommodation of its members and guests, and its conduct of "all business requisite for the health and welfare of its members and guests while there resident." These purposes are by the terms of the charter in furtherance of its principal purpose, and in practice they seem to remain so.

This Association clearly falls within the class of Missionary societies which this Court has included "within the realm of public charities." *Prime* v. *Harmon,* 120 Maine, 299, 301; *Straw* v. *East Maine Conference,* 67 Maine, 494; *Maine Baptist Missionary Convention* v. *Portland,* 65 Maine, 92. The Association, we think, is a "benevolent and charitable institution incorporated by the State," the real property of which occupied for its own purposes is exempt from taxation. R.S., Chap. 10, Sec. 6, Par. III.

The crucial question to be here determined is, what are the purposes for which the land and buildings of the Association are used and occupied? And the question must be answered by the application of the settled rules established by this Court in its numerous decisions interpreting the statutory exemption under which the Association claims relief.

It is a fundamental rule of the law of taxation that "taxation is the rule and exemptions the exception." And all doubts and uncertainties as to the meaning of a statute are to be weighed against exemption. Out of this rule springs the doctrine that "when the

property of an institution is by legislative grant exempted from taxation, the exemption must be held as applying only to such property as is occupied by such institutions for their own purposes." *Auburn* v. *Y. M. C. Association*, 86 Maine, 244.

In this state this doctrine has been written into the tax statute, appearing as a limitation or exception appended to the general exemption granted benevolent and charitable institutions. It reads: "But so much of the real estate of such corporations as is not occupied by them for their own purposes shall be taxed in the municipality in which it is situated." R.S., Chap. 10, Sec. 6, Par. III.

The application of this statutory limitation is aptly illustrated in the case of *Foxcroft* v. *Straw*, 86 Maine, 76, and *Foxcroft* v. *Campmeeting Association*, 86 Maine, 78, cases in which the use and occupation of the property sought to be exempted from taxation were markedly similar to those of the appellant. In these cases it appears that the Piscataquis Valley Campmeeting Association owned and maintained a campground so called, consisting of ten acres of land, a part of which was used for an auditorium where religious meetings were held, a part for lots let 'to members for the erection of cottages, a part used for a stable and stable yard where horses were stabled for hire, and a part let for an eating house or victualing purposes. In *Foxcroft* v. *Straw* the Court, considering a tax assessed upon a lot let for cottage erection, said: "We are of opinion that the lot was not exempt from taxation, as it was not occupied by the corporation for its own purposes, within the meaning of (the statute)." In *Foxcroft* v. *The Campmeeting Association*, in a consideration of taxes assessed upon other property of that Association, the Court reaches the conclusion that "the property used for the stabling of horses for hire, let for victualing purposes and for the use of cottages is clearly not occupied by the association for its own purposes within the meaning of (the statute). It is property from which revenue is derived — just as much business property as a store or mill would be.

"That part used for an auditorium or tabernacle,— used for the accommodation of the association, where its meetings are held, is used for a common purpose — 'its own purposes' within the meaning of the statute and is exempt from taxation."

Examining the Report before us, we find that the appellant Association owns and maintains a meeting-ground at Ferry Beach, an Atlantic seashore location within the limits of the City of Saco. The exact acreage of its holdings is not made clear. With a frontage on the beach it owns back to and across the main highway, including a fourteen acre tract of standing pine timber and 4 1/10 acres of marsh land adjoining.

Some of its shore lots are vacant land, but on part of the six lots into which the shore property is laid out the Association has erected or acquired a hotel accommodating seventy guests, called The Ferry Park House. It has built an annex to the hotel. It has a dormitory close by called The Belmont, formerly in part a bowling alley. Near by it has a rooming house which is called Cottage Annex. It also has a men's dormitory, in which is located a bowling alley still used by its members. Finally, between the Boston & Maine Railroad tracks (which run through the property) and the sea is the Pavilion so called. This list includes the substantial buildings of the Association.

In the tract of pine timber across the road from the buildings described, a grove has been cleared and a pulpit erected, with benches and settees grouped around within hearing distance. The balance of the timber-land is unoccupied by buildings, but in part let to members and occasionally to motorists as tenting grounds.

The Association occupies the Park for only a few weeks during the summer season, holding daily, during that brief period, schools of instruction and education and devotional exercises along chosen religious lines. Study and instruction in missionary work holds an important place in the Association's program. The attendance at these sessions is made up of pastors and parishioners with their families of the Universalist denomination. The hotel and its annex and the boarding-houses are all run and operated for hire and return a small margin of profit to the Association. The beach is used by the members and guests for bathing. The timber-land outside of the grove proper is used as a camping-ground or unoccupied.

The Pavilion which has been described appears to be devoted exclusively to the purposes of the Association, it being its indoor meeting-place, and undoubtedly, with the land upon which it

stands, is exempt from taxation. So, too, we think is such portion of the pine timber tract as is used as an outdoor meeting-place. Upon the record it is occupied solely for the Association purposes, and it may be fairly inferred is generally so used when weather permits. Its extent or value, however, is not made clear.

The only information as to the area of the timber-land actually occupied by the Association for "its purposes" comes from the secretary and the president of the Association. Unfortunately both of these gentlemen are very indefinite in their statements as to the size of the grove which the Association uses. Their estimates of area are confessedly made without actual knowledge, and admitting that only a small part of the pine tract is so occupied, the measurements and comparisons which they furnish give it an area equalling or exceeding the entire acreage of the tract.

We have carefully sought in the record facts from which the extent of the exempt meeting-place of the Association in this pine grove might be determined and valued. The facts are not here, and we are unable to determine the excess of tax which has been levied upon this exempt property. The burden is upon the appellant to prove facts showing error or injustice in the assessment appealed from by competent and satisfactory evidence. The assessment upon appeal is assumed to be correct. We can here only point out as indicated that the Association's meeting-place in the grove is exempt, but in this proceeding upon this record cannot grant abatement of the tax assessed thereon in the year 1925.

The properties of the Association other than the Pavilion and the "grove" are subject to taxation. They are properties "from which revenue is derived," and "clearly not occupied by the Association for its own purposes." *Foxcroft* v. *The Campmeeting Association*, supra.

Upon these conclusions, it being stipulated that all statutory requirements necessary for the perfection of this appeal have been complied with, the tax assessed by the City of Saco upon the real property of the appellant Association for the year 1925 must be abated in the following particulars:

| | | |
|---|---|---|
| Lot land between B. M. R. R. and Sea, | 400.00 | 16.20 |
| Pavilion on above, Plan 10 | 400.00 | 16.20 |
| Total | | 32.40 |

And it appearing that the appellant has paid under protest the taxes assessed upon its property for the year 1925 (including such as are here abated), judgment must be rendered against the City of Saco for $32.40, with costs which are here awarded.

*Judgment for appellant against the City of Saco, appellee, for $32.40 with costs.*