FERRY BEACH PARK ASSOCIATION

OF THE UNIVERSALIST CHURCH

*vs.*

CITY OF SACO.

York.  Opinion, July 13, 1939.

*Robinson & Richardson*, for appellant.
*Philip E. Graves*,
*Francis W. Sullivan*, for appellee.

SITTING: STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J.   This case originated as a petition for abatement of taxes assessed against the plaintiff appellant by the City of Saco. for the years 1937 and 1938 on an aggregate valuation of its property of $18,875, the tax being $906 for each year. Upon refusal of abatement, appeal was taken to the Superior Court and the case comes forward on report.

The plaintiff is a corporation, without capital stock, organized under R. S., Chap. 70, Sec. 1, which authorizes, among other things incorporation for literary, charitable, educational, social, moral, religious or benevolent purposes.

Plaintiff claims exemption from taxation under the provisions of R. S., Chap. 13, Sec. 6, Subdivision III, exempting "the real and personal property of all benevolent and charitable institutions incorporated by the state." In accordance with legal principles, and the interpretation of the statute as enunciated by our Court, this is subject to the limitation that the exemption applies only to property occupied by the corporation for its own purposes. *Auburn* v. *Y. M. C. A.*, 86 Me., 244, 29 A., 992.

The plaintiff is successor corporation, with slight variation in name, to a corporation whose like claim for exemption was considered by this Court in *Ferry Beach Park Assn. of Universalists* v. *City of Saco*, 127 Me., 136, 142 A., 65, 66. The fundamental reasoning of the opinion in that case, buttressed by former decisions of our Court, furnishes a clear guide to the determination here. This predecessor corporation was there found to be a "benevolent and charitable institution incorporated by the state," and its property, occupied for its own purposes, to be exempt from taxation. The difficulty encountered upon the record in that case was the failure to show whether certain property was so used, and the finding that other specified property was not thus occupied. Property found to be definitely devoted to the purposes of the Association, was held to be exempt.

In 1936 the present corporation was formed. Certain basic changes appear in the statement of corporate purposes, eliminating therefrom anything which, in the former corporation, might have appeared to authorize the conduct of a business for profit. Its certificate of incorporation provides:

"The purposes of the corporation are religious and educational, to wit: generating of missionary power throughout the Universalist Church; and in furtherance thereof the carrying on of religious and educational institutes, lectures and concerts, the conducting of religious services and public observances for the development of moral and religious character; and as incident thereto, for its own purposes, as above set forth, to provide, without pecuniary profit, lodging and boarding accommodations for the comfort, convenience, health, safety and welfare of its members in attendance at and in connection with such institutes, lectures, concerts, services and observances; provided, however, that the corporation is to hold, maintain and occupy its property wholly for its own religious and educational purposes as above set forth."

Further, the present corporation does not hold title to certain parcels of real estate which the predecessor Association owned, and which were not devoted to the purposes for which it was organized.

Again, the scope of its activities are clearly defined in the present record. It is shown that a series of "institutes," as they are called, continuing through July and August, are more varied than those considered in the earlier case, but serve to emphasize its objective of developing "missionary power throughout the Universalist Church." It is made still more certain that the present corporation, like the one which it succeeded, operates "in substantial accord with the purposes for which it was given charter. Primarily it is a Missionary Society, carrying on along lines of its own election, the diffusion and inculcation of the Christian religion." *Park Assn.* v. *Saco*, supra.

In *Camp Emoh Associates* v. *Lyman*, 132 Me., 67, 166 A., 59, 61, the Court points out:

"Immunity from assessment depends, not upon simple ownership and possession of property, nor necessarily upon

the extent, or length, of the actual occupancy thereof, although this is entitled to consideration, but upon exclusive occupation of such a nature as, within the meaning of the statute, contributes immediately to the promotion of benevolence and charity, and the advancement thereof."

The record in this case preponderantly and fairly supports the contention of the plaintiff that all its property is exclusively devoted to the purposes for which it was organized, and that within the purview of our decisions it is a benevolent and charitable institution. *Baptist Missionary Convention* v. *Portland*, 65 Me., 92 ; *Prime* v. *Harmon*, 120 Me., 299, 113 A., 738 ; *Park Assn.* v. *Saco*, supra.

Opposing argument by counsel for the City of Saco, relative to the work of the Association and the claim that it is of a business character, is not substantiated by the facts as they appear of record.

There is also insistence that the Association is purely a religious corporation and must be governed as to exemptions by the provisions of R. S., Chap. 13, Sec. 6, Subdivision V. As this exemption applies only to houses of religious worship and parsonages, it is urged that consequentially there is no exemption here. A careful review of the cases cited as to distinctions between religious, benevolent and charitable societies, including *Bangor* v. *Masonic Lodge*, 73 Me., 428 ; *Foxcroft* v. *Campmeeting Assn.*, 86 Me., 78, 29 A., 951 ; *Doyle* v. *Whalen*, 87 Me., 414, 32 A., 1022, indicates no real conflict with the decisions in support of our present holding.

Under the terms of the stipulation and report, the Law Court is to render such judgment as the legal rights of the parties require. The plaintiff, being appellant from the decision of the assessors to the Superior Court, the mandate will be

*Appeal sustained.*
*Judgment accordingly.*