## MAINE AFL–CIO HOUSING DEVELOPMENT CORPORATION

v.

## TOWN OF MADAWASKA, et al.

Supreme Judicial Court of Maine.

Argued March 2, 1987.
Decided April 2, 1987.

Sidney St. F. Thaxter, James N. Broder (orally), Nancy C. Ziegler, Curtis Thaxter Stevens Broder & Micoleau, Portland, for plaintiff.

Rudolph T. Pelletier (orally), Madawaska, Dawn Pelletier, Rudman & Winchell, Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The defendants, Town of Madawaska and its selectmen and tax assessors, appeal from a summary judgment granted in favor of the plaintiff, Maine AFL–CIO Housing Development Corporation (corporation), by the Superior Court (Penobscot County). The Superior Court held that in operating a housing project for low income elderly or handicapped persons in the Town, the corporation was a "benevolent and charitable" institution and, therefore, exempt from municipal property taxation under 36 M.R.S.A. § 652 1(A) (1978). The court ordered the defendants to refund to the corporation any tax paid that was over and above amounts the corporation had agreed to pay to the Town through a service fee agreement. By its cross-appeal, the corporation challenges that portion of the judgment that reduces the amount of refund by amounts owed under that agreement. For the reasons set forth herein, we affirm.

I.

The facts of this case are not in dispute. In 1979, the plaintiff incorporated itself under the Maine Non-Profit Corporation Act, 13–B M.R.S.A. §§ 101–1401 (1981 & Supp.1986), as a charitable, non-profit corporation for the purpose of developing, constructing and managing federally-subsidized housing facilities for low income elderly or handicapped persons. It subsequently began development of a sixty-two unit housing project in Madawaska called La Maison Acadienne.

The project was financed by a direct loan from the United States Department of Housing and Urban Development (HUD) pursuant to the National Housing Act, 12 U.S.C. §§ 1701–1750g. In order to obtain that financing HUD required the corporation, *inter alia*, to sign a regulatory agreement and qualify as a tax exempt charitable entity for federal income tax purposes. *See* 26 U.S.C. § 501(c)(3). Under a Housing Assistance Payments contract with the corporation, HUD agreed to provide rent subsidies to all tenants at the project for twenty years.

The corporation's contracts with HUD require it to comply with federal regulations that limit tenant eligibility for housing at the project to very low income elderly or handicapped individuals and establish maximum levels on rents and other charges to these tenants. Any income derived from the ownership or operation of the project is subject to HUD control, and expenditures must be in accordance with operating budgets that are annually approved by HUD. The agreements and regulations prohibit persons affiliated with the corporation from having financial interests in, or deriving any income from, any aspect of the project. They also provide that upon dissolution, the project's assets must be distributed to HUD or similar tax-exempt charitable corporations designated under section 501(c)(3) of the United States Internal Revenue Code.

On July 1, 1981 the Board of Selectmen for the Town adopted a resolution that the project, upon completion, would be exempt from property taxation and that the corporation would pay the Town an annual service fee in lieu of taxes pursuant to an agreement between the corporation and the Town.

Construction of the project was completed in 1982. Members of the AFL–CIO were part of the construction work force.

Despite the Board's resolution, the Town's tax assessors included the project in the Town's property tax assessment for 1983, and sent the corporation a tax bill. A management agent for the corporation paid the tax in full allegedly by mistake. The corporation notified the Town that the tax was paid by mistake, asserted its right to exemption, and sought an abatement of the 1983 taxes. The Town refused to grant that abatement, and again included the project in the Town's property tax assessments for 1984, 1985, and 1986. The corporation refused to pay those taxes.

On December 14, 1984, the corporation commenced this action by filing a three count "Complaint for Declaratory Judgment and Application for Injunction" against the defendants. In count II, it sought (1) a declaratory judgment that the property is exempt from property taxation under 36 M.R.S.A. § 652(1)(A), (2) a permanent injunction requiring the defendants to grant the tax exemption, and (3) a permanent injunction that would enjoin the defendants from pursuing lien procedures against the project for any property taxes. Under count II, the corporation also requested "any other relief" that the court found proper.

On March 28, 1986, the corporation filed a motion for summary judgment on count II of its complaint. After hearing, the Superior Court granted the motion and entered judgment for the corporation. The parties subsequently dismissed, by agreement, the remaining counts of the complaint without prejudice, and filed their timely appeal and cross-appeal of the judgment.

## II.

The primary issue on appeal is whether or not the corporation qualifies for property tax exemption as a "benevolent and charitable" institution under 36 M.R.S.A. § 652(1)(A) (1978) by operating a housing project for low income elderly or handicapped persons. In reviewing the Superior Court's grant of summary judgment to the plaintiff corporation, we view the evidence in the light most favorable to the defendants and give them the "full benefit of all favorable inferences that may be drawn from the evidence." *Lidstone v. Green,* 469 A.2d 843, 845 (Me.1983). The evidence before the Superior Court must be examined to insure that the substantive law was

correctly applied. *Emerson v. Sweet*, 432 A.2d 784, 785 (Me.1981).

Section 652 provides in pertinent part:

The following property of institutions and organizations is exempt from taxation:

1. Property of institutions and organizations.

A. The real estate and personal property owned and occupied or used solely for their own purposes by *benevolent and charitable* institutions incorporated by this State, and *none of these shall be deprived of the right of exemption by reason of the source from which its funds are derived* or by reason of limitation in the classes of persons for whose benefit such funds are applied.

36 M.R.S.A. § 652(1)(A) (1978) (emphasis added).[1]

■ In determining what constitutes a "benevolent and charitable" institution under this statute, we need not consider the term "benevolent;" we construe that term to be synonymous with the word "charitable." *Holbrook Island Sanctuary v. Town of Brooksville*, 161 Me. 476, 483–84, 214 A.2d 660, 664 (1965). Under the plain language of subsection 652(1)(A), if an institution is incorporated under the laws of this State as a charitable institution, it is exempt from property taxes if it uses the property in question to further its charitable purposes. In *Green Acre Baha'i Institute v. Town of Eliot*, 150 Me. 350, 354, 110 A.2d 581, 584 (1954) we said:

In each situation where exemption is claimed, there must be a careful examination to determine whether in fact the institution is organized and conducting its operation for purely benevolent and charitable purposes in good faith, whether there is any profit motive revealed or concealed, whether there is any pretense to avoid taxation, and whether any production of revenue is purely incidental to a dominant purpose which is benevolent and charitable. When these questions

are answered favorably to the petitioner for exemption, the property may not be taxed.

■ Applying these standards to the case before us, we conclude that the corporation, in the operation of its project, is not subject to property taxes by the Town. It is clear from the undisputed facts that the corporation is organized and, in good faith, operates its project for charitable purposes.

The defendants argue, however, that the corporation is not a charitable institution because it provides no funds of its own to the project, but acts only as a conduit to channel finances provided by the federal government. This argument lacks merit because the statute explicitly provides that a charitable institution is not "deprived of the right of exemption by reason of the source from which its funds are derived." 36 M.R.S.A. § 652(1)(A) (1978).

The defendants advance the following additional bases for rejecting the corporation's claim to tax exemption: (a) the corporation derived benefits from the project because AFL–CIO members worked on its construction, (b) residents at the project must pay a portion of the rent and can be evicted for non-payment, and (c) the corporation failed to present evidence that the project residents are better off than they would be without the project. We are not persuaded by these arguments that the corporation's claim to property tax exemption must fail.

Any benefits indirectly derived by the corporation as a result of AFL–CIO union members being employed in the construction of the project were merely incidental to its primary charitable purpose. The receipt of such incidental benefits does not defeat the corporation's right to property tax exemption in operating the project. *See Maine Medical Center v. Lucci*, 317 A.2d 1 (Me.1974); *Green Acre Baha'i Institute v. Town of Eliot*, 150 Me. at 353–54, 110 A.2d 581. Similarly, the corporation's project does not lose its charitable charac-

---

1. An entity must also meet the requirements of paragraph C of section 652(1) to qualify for property tax exemption. The parties do not

dispute that the corporation's housing project meets those requirements.

ter simply because tenants must pay for a fraction of the cost of their housing. *See generally,* 71 Am.Jur.2d, State and Local Taxation, § 373 (1973). That aspect of the project's financing and the related rule, on paper, that tenants may be evicted if they fail to pay the nominal fees, do not destroy the charitable nature of the project. Finally, we reject the defendants' contention that the corporation failed to show that project residents are better off than they would be without the project and is, therefore, not a "charitable" institution. The HUD regulations controlling the corporation's project clearly restrict the eligibility of tenants to those whose incomes are very low and who are either elderly or handicapped. The project is the result of initiatives of the United States Congress to provide suitable housing for elderly and handicapped persons. *See, e.g.,* 12 U.S.C. § 1701r (1982). By fitting within that Congressional policy, the project benefits the public and is charitable. *See, e.g., Yorgason v. County Board of Equalization of Salt Lake County,* 714 P.2d 653 (Utah 1986); *see also Senior Citizens Housing Development Corporation of Claremont v. City of Claremont,* 122 N.H. 1104, 453 A.2d 1307 (1982).

Having carefully reviewed the undisputed evidence in the record, we are satisfied that the corporation is organized and conducting its project for purely benevolent and charitable purposes. We see no evidence that it is attempting to derive profits from the project. In fact, under binding contracts and federal regulations it is prohibited from doing so. In these circumstances, we conclude that the Town may not impose a property tax upon the corporation. *See Green Acre Baha'i Institute v. Town of Eliot,* 150 Me. at 354, 110 A.2d 581.

### III.

On cross-appeal, the corporation argues that the Superior Court erred in ordering the Town to refund only that portion of taxes paid by the corporation "over and above the amount of the service fee agreement between the parties." The corporation contends that by such an order,

the court implicitly decided issues not properly before it: the validity and enforceability of the agreement. We disagree.

When the Superior Court entered judgment for the corporation on count II, it had before it allegations in the corporation's complaint that the service fee agreement between the parties was valid and enforceable. Furthermore, in seeking equitable relief under count II, the corporation asked the court to fashion a remedy which included any relief that the court found proper. In these circumstances, we conclude that the Superior Court did not err by ordering a refund of taxes paid above amounts owed under the parties' service fee agreement.

The entry is:

Judgment affirmed.

All concurring.