CITY OF LEWISTON

v.

MARCOTTE CONGREGATE
HOUSING, INC.

Supreme Judicial Court of Maine.

Argued Jan. 2, 1996.
Decided March 5, 1996.

Bryan M. Dench (orally), Ronald P. Lebel, Skelton, Taintor & Abbott, Auburn, for Plaintiff.

John Geismar, Susan E. Oram (orally), Isaacson & Raymond, Lewiston, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Marcotte Congregate Housing, Inc. (MCH) appeals from the judgment entered in the Superior Court (Androscoggin County, *Marden, J.*) vacating the decision of the State Board of Property Tax Review determining that, pursuant to 36 M.R.S.A. § 652(1)(A) & (J) (1990 & Supp.1995),[1] a portion of one of MCH's properties and the entirety of another of its properties are exempt from taxation. MCH contends that because the Board properly applied the statute by granting the exemptions, the trial court erred in vacating the Board's decision. We affirm the judgment.

The record reveals the following pertinent facts: MCH is a non-profit corporation organized under the law of Maine. It owns two parcels of real estate that are the subject of the instant appeal: (1) a five-story multiple use building that houses a congregate care facility, a kitchen and cafeteria, a chapel, and various office and storage spaces (the building), and (2) a tunnel that connects the building to St. Mary's Regional Medical Center.

In 1992, the City of Lewiston (City) issued tax bills imposing real estate taxes on the building and the tunnel.[2] In response, MCH submitted to the City two applications for abatement of the assessed taxes, claiming the properties were exempt pursuant to 36 M.R.S.A. § 652(1)(A) and (J). Following the City's denial of the applications, MCH filed two petitions for assessment review with the Board.

After hearings on the petitions,[3] the Board determined that MCH qualifies, for purposes of 36 M.R.S.A. § 652(1), as an institution organized and conducted exclusively for benevolent and charitable purposes.[4] The Board found that the building contains 110 residential units that are leased pursuant to a United States Housing and Urban Development Housing Assistance Payments Contract administered by the Lewiston Housing Authority and an additional 18 residential units that are leased to low-income and disabled elderly tenants at market rental rates without federal subsidies. The Board further found that in addition to containing these congregate housing units, the building also contains (1) storage space that is leased at market rental rates to the Sisters of Charity Health System, Inc., Campus Cuisine, Inc., St. Mary's Regional Medical Center, and Marcotte Nursing Home;[5] (2) a kitchen and cafeteria space that is leased at market rental rates to Campus Cuisine; and (3) office space that is leased at market rental rates to Sisters of Charity, Campus Cuisine, and private physicians.[6] Based on these findings of fact, the Board concluded that the dominant use of the building is to provide federally subsidized housing for low-income and disabled elderly tenants. Accordingly, the

---

1. Section 652(1) exempts from taxation certain property of qualifying organizations. Specifically, section 652(1)(A) exempts from taxation "[t]he real estate and personal property owned and occupied or used solely for their own purposes by benevolent and charitable institutions incorporated by this State...." 36 M.R.S.A. § 652(1)(A) (Supp.1995). Section 652(1)(J) exempts from taxation "[t]he real and personal property owned by [benevolent and charitable] organizations and occupied or used solely for their own purposes by one or more other ... organizations" qualifying for exemption pursuant to section 652(1)(A)–(C), (E)–(H). 36 M.R.S.A. § 652(1)(J) (1990).

2. The building and tunnel were acquired by MCH by separate deeds. Accordingly, the City treated them as separate properties by issuing separate tax bills.

3. The two petitions were consolidated into a single action.

4. As provided by 36 M.R.S.A. § 652(1)(C)(1) (Supp.1995), "[a]ny corporation claiming exemption under [section 652(1)(A)] must be organized and conducted exclusively for benevolent and charitable purposes."

5. Sisters of Charity is the parent corporation to MCH, Campus Cuisine, St. Mary's Regional Medical Center, and Marcotte Nursing Home. The Board found that Sisters of Charity and each of its above-named subsidiaries is a Maine non-profit corporation and that each one is organized and conducted exclusively for benevolent and charitable purposes within the meaning of 36 M.R.S.A. § 652(1).

6. Physicians leasing office space in the building provide medical services both to the general public and to some of the congregate housing residents. Many of them specialize in areas other than gerontology, including pediatrics, child and adult psychology, obstetrics and gynecology, and pediatric dentistry.

Board determined that 82 percent of the building is tax exempt pursuant to 36 M.R.S.A. § 652(1)(A) and (J), and that the remaining 18 percent, representing the physicians' offices and the nonsubsidized congregate housing units, is taxable.

With respect to the tunnel, the Board found that it is used to transport meals and patients from the building to St. Mary's Regional Medical Center. It determined that this use is incidental to the use of the building and that therefore the entire tunnel property is tax exempt.

From the Board's decision concluding that a portion of the building and all of the tunnel are exempt from taxation, the City sought review by the Superior Court pursuant to 5 M.R.S.A. § 11002 and M.R.Civ.P. 80C. MCH filed a cross-petition for review in which it asserted the Board erred in finding 18 percent of the building to be taxable. After a hearing, the trial court concluded that MCH qualifies as a benevolent and charitable organization for tax exemption purposes but that the building and tunnel are used in such a manner as to not be exempt. From the judgment entered accordingly, MCH appeals.

I

■■■ When, as here, the Superior Court acts in the capacity of an appellate tribunal, "we review directly the decision of the Board for abuse of its discretion, error of law or findings unsupported by substantial evidence in the record." *IBM Credit Corp. v. City of Bath*, 665 A.2d 663, 664 (Me.1995) (citing *Town of Vienna v. Kokernak*, 612 A.2d 870, 872 (Me.1992)). It is well settled that "a strict construction of the exemption statute is appropriate ... because of the basic principle, upon which we have repeatedly relied, that 'taxation is the rule and tax exemption is the exception.'" *Connecticut Bank & Trust Co., N.A. v. City of Westbrook*, 477 A.2d 269, 271 (Me.1984) (quoting *Silverman v. Town of Alton*, 451 A.2d 103, 105 (Me.1982)). Accordingly, for MCH to prevail on its appeal, it must bring its claim "unmistakably within the spirit and intent of the act creating the exemption." *Episcopal Camp Found. Inc., v. Town of Hope*, 666 A.2d 108, 110 (Me.1995)

(quoting *Holbrook Island Sanctuary v. Town of Brooksville*, 161 Me. 476, 483, 214 A.2d 660, 664 (1965) (citations omitted)).

II

■■■ To qualify for an exemption pursuant to sections 652(1)(A) and (J), MCH must establish that it is "organized and conducted exclusively for benevolent and charitable purposes." 36 M.R.S.A. § 652(1)(C)(1) (Supp. 1995). The Board determined that MCH satisfies this requirement, and the City contends such determination constitutes error.

As stated in its articles of incorporation, MCH "is organized exclusively for charitable, religious, educational and scientific purposes." Such purposes include, *inter alia*, (1) "function[ing] as an integral part of ... a Roman Catholic religious congregation ... engaged in providing for the health, social and spiritual needs of people through apostolic and charitable services"; (2) owning and operating hospitals, nursing homes, congregate housing and other such facilities "for the care, treatment and healing of human ailments and prevention of disease"; and (3) "coordinat[ing] activities of affiliate and subsidiary organizations ... as those organizations pursue their charitable, religious, educational, scientific and other purposes...." MCH is controlled by the Sisters of Charity, its sole corporate member, which in turn is controlled by the Covenant Health Systems, Inc., a Massachusetts nonprofit corporation. No part of MCH's net earnings inure to the benefit of any private individual, and, except for reasonable compensation for services rendered, none of its income is distributed to its members, directors, or officers.

■■■ In determining whether an organization is organized and conducted exclusively for benevolent and charitable purposes, we recently described a charity to be

for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or

works or otherwise lessening the burdens of government.

*Episcopal Camp Found.*, 666 A.2d at 110 (quoting *Johnson v. South Blue Hill Cemetery Ass'n*, 221 A.2d 280, 287 (Me.1966)). We conclude that MCH falls within the above description. We also conclude that, contrary to the City's contention, neither MCH's religious purposes nor its corporate affiliation with religious organizations removes it from the purview of the tax exemption statute. *See Episcopal Camp Found.*, 666 A.2d at 108 (Episcopal Camp Foundation qualified for exemption despite stated purpose "to maintain camps ... which will carry on moral, cultural, religious and recreational training and education...."); *Green Acre Baha'i Inst. v. Town of Eliot*, 150 Me. 350, 352, 110 A.2d 581 (1954) (organization qualified for exemption despite stated purpose to, *inter alia*, "conduct educational facilities ... for the exposition of spiritual truths, principles and religious precepts based upon the extent and available sacred literature of all revealed faiths, with particular reference to the Baha'i teachings on progressive revelation, religion, unity, and the oneness of mankind...."); *Town of Poland v. Poland Spring Health Inst., Inc.*, 649 A.2d 1098 (Me.1994) (organization qualified for tax exemption despite operating properties consistent with religious tenets, and despite religious affiliation when such affiliation did not compromise charitable purpose). Accordingly, the Board did not err in determining that MCH qualifies as a benevolent and charitable organization.

### III

MCH must next establish that its uses of the building and tunnel qualify the properties for tax exemption pursuant to section 652(1)(A) or section 652(1)(J). The Board determined that portions of the building leased to private physicians and nonsub-

sidized congregate housing tenants, constituting 18 percent of the building's value, do not qualify for exemption pursuant to these sections. Nevertheless, the Board exempted the remaining 82 percent of the building's value.[7] The City contends this award of a partial exemption constitutes a misapplication of the statute. We agree.

Section 652(1)(A) exempts from taxation real property that is "owned and occupied or used *solely* for their own purposes by benevolent and charitable institutions...." 36 M.R.S.A. § 652(1)(A) (emphasis added). Contrary to MCH's contentions, the plain language of section 652(1)(A) precludes exempting the building from taxation because 18 percent of the building is not used in furtherance of MCH's charitable purposes, i.e., the building is not used "solely" for MCH's charitable purposes.[8] Similarly, section 652(1)(J) exempts from taxation, *inter alia*, real property owned by charitable and benevolent organizations that is "occupied or used *solely* for their own purposes by one or more other [qualifying] organizations." 36 M.R.S.A. § 652(1)(J) (emphasis added). Because the private physicians and residents paying full market rental value for their quarters are not qualifying organizations pursuant to section 652(1)(J), the building is not within the purview of this exemption.

Because we conclude that MCH's building is not used in a manner qualifying it for tax exemption pursuant to either section 652(1)(A) or section 652(1)(J), we conclude that the tunnel, which is incidental to the building's use, also is not tax exempt.

### IV

Finally, we need not consider MCH's contention that the Board erred by determining that the nonsubsidized congregate housing units are taxable.[9] Regardless of whether

---

**7.** The Board exempted the entire value of the tunnel based on its finding that it is incidental to the uses of the building.

**8.** Although a prior provision of Maine's tax exemption statute permitted the exemption of *portions* of real property owned by benevolent and charitable institutions, R.S.1944, ch. 81, § 6, sub–§ III, the Legislature repealed and replaced such provision by enacting language that, like the

current statutory scheme, exempts "real and personal property owned and occupied or used *solely* for their own purposes by benevolent and charitable institutions incorporated by the state." P.L.1953, ch. 37 (emphasis added).

**9.** MCH alleged on its cross-appeal to the Superior Court that the Board erred in determining that the nonsubsidized congregate housing units and the space leased to private physicians are

these units are exempt, the portion of the building leased to private physicians renders the entire property subject to taxation.

The entry is:

Judgment affirmed.

All concurring.

---

taxable. On its appeal to this Court, however, MCH alleges that the Board erred in determining that the nonsubsidized housing units are taxable.

MCH does not challenge the Board's determination regarding space leased to private physicians.