STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-04-06,
PAF ~~~ - 10/25 - 004

CHRISTIAN FELLOWSHIP AND
RENEWAL CENTER,

      Plaintiff

    v.

TOWN OF LIMINGTON, et als.,

      Defendants

ORDER
AND
DECISION

DONALD L. GARBRECHT
LAW LIBRARY

NOV 3 2004

The plaintiff has appealed from a January 7, 2004 decision of the York County Commissioners which denied its request for a property tax abatement for the 1996 tax year. The procedural history of this case is lengthy and can be found, in part, in *Christian Fellowship and Renewal Center v. Town of Limington*, 2001 ME 16, 769 A.2d 834. Following a number of additional orders and proceedings the Commissioners made their decision and after further orders and stipulations this appeal, following the submission of briefs and oral argument, is ready for a resolution. The parties have provided this court with a detailed Stipulation of Fact which vastly aided judicial review of this dispute.

The Christian Fellowship and Renewal Center (CFRC) has been a Maine non-profit corporation since December of 1987 and has owned real estate in Limington since April of 1989. In 1996 Limington did not tax the main building of CFRC or an adjoining 3 acres but did tax a farmhouse, the caretaker's house and the remaining land which consists of 72 acres, but was found to be comprised of 88 acres. The CFRC sought tax-exempt status for the farmhouse, caretaker's house and remaining 72 acres.

The CFRC is exempt from federal income taxation pursuant to 26 USC §501(c)(3), has directors who must be Christians, and is organized to provide religious, charitable and educational services particularly by assisting fundamentalist, bible-believing churches and individuals both physically and spiritually. It did so by providing food to the needy and by making its facilities available to churches and their members at reduced rates. The facilities are primarily available to individuals and entities that hold fundamental bible-based religious views. The main building was used both for food distribution for the poor and to rent to churches and religious groups. The rental fees were modest and were waived for individuals who could not afford them. The stipulated facts indicate that the revenues of CFRC were modest and that the expenses slightly exceeded the revenues in 1996.

The CFRC also allowed individuals who were using the main building to use the remainder of the property for recreation. The farmhouse was used by a minister and his family and for overflow lodging if there was a group that was too large to be housed entirely in the main building. The caretaker's house was used, as its name suggests, by the caretakers of the property. The caretakers received no compensation for their services, but were not charged any rent. Lastly the property is available for rent for a variety of activities such as conventions, family reunions, bridal and baby showers, conferences, seminars and anniversary parties, but was not actually rented for any of those purposes.

The Commissioners determined that the taxed property was not also entitled to tax exempt status as the CFRC was "primarily organized and conducted for religious purposes to benefit certain religious groups and individuals ... and the Center's primary use of its property is as rental property for the benefit of such religious groups and individuals." The Commissioners found that CFRC had "... failed to demonstrate

2

that it provides any significant benefit to the general public or the local community or that it provides a service or benefit that the government would otherwise provide." The Commissioners did find that food distribution to the needy constituted a charitable and benevolent purpose, that only a small portion of the "retreat center", presumably the main building, was used for this purpose and that the CFRC had not established its entitlement to an exemption.

We have both statutes and a substantial body of Maine Supreme Judicial Court (Law Court) decisions to add in deciding this case.

As early as 1928 the Law Court stated, "It is a fundamental rule of the law of taxation that 'taxation is the rule and exemptions the exception.' And all doubts and uncertainties as to the meaning of a statute are to be weighed against exemption." *Ferry Beach Park Association v. City of Saco*, 127 Me. 136, 138 (Me. 1928). That rule has been clarified in *Holbrook Island Sanctuary v. Town of Brooksville*, 161 Me. 476, 483, 214 A.2d 660, 64 (ME. 1965) to require the organization to come "unmistakably within the spirit and intent of the act creating the exemption." and tempered in *State Young Men's Christian Association of Maine v. Town of Winthrop*, 295 A.2d 440, 442 (Me. 1972) with the finding that, "This rule, however, does not require that the narrowest possible meaning must be given to words descriptive of exemption. The strict construction must still be a reasonable construction."

While taxation is the rule and exemptions are the exception the Legislature has created a number of exemptions found at 36 M.R.S.A. §652, which exempts from taxation certain property of institutions and organizations. An exemption that does not directly affect this case is the exemption for "Houses of religious worship, including vestries" and "property owned and used by a religious society as a parsonage to the value of $20,000, and personal property not exceeding $6,000 in value, but so much of

3

any parsonage as is rented is liable to taxation. For purposes of the tax exemption provided by this paragraph, a parsonage shall mean the principal residence provided by a religious society for its clergyman whether or not located within the same municipality or place as the house of religious worship where the clergyman regularly conducts religious services." See 36 M.R.S.A. §652(1)(G). This sub-section is the religion-based exemption that is directly provided to assist churches. The house of religious worship is exempt from taxation while a portion of the value of a parsonage or rectory is also exempt.

There is a second exemption that is available to both religious and non-sectarian institutions and organizations. That exemption is found at 36 M.R.S.A. §652(1)(A) and is available to "benevolent and charitable institutions." The questions become whether the farmhouse, caretaker's house and the remaining acres are "owned and occupied or used solely for their own purposes by benevolent and charitable institutions", 36 M.R.S.A. §652(1)(A) and whether the CFRC is "organized and conducted exclusively for benevolent and charitable purposes." 36 M.R.S.A. §652(1)(C)(1).

The word "benevolent" is to be construed as synonymous with the word "charitable". *Maine AFL-CIO Housing Development Corporation v. Town of Madawaska*, 523 A.2d 581, 4 (Me. 1987). In the case of *Episcopal Camp Foundation, Inc. v. Town of Hope*, 666 A.2d 108 (Me. 1995) the Law Court was faced with the issue of whether providing children with the opportunity to attend a summer camp below cost was a charitable and benevolent purpose. It described a charity, at 110, by quoting from *Johnson v. South Blue Hill Cemetery Association*, 221 A.2d 280, 7 (Me. 1966), to be "for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or

4

constraint, by assisting themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government."

The justification for granting the exemption was also stated, at 110, as "any institution by its charitable activities relieves the government of part of [its] burden is conferring a pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a 'quid pro quo' for its services in providing something which otherwise the government would have to provide.", quoting from *YMCA of Germantown v. City of Philadelphia*, 323 Pa. 401, 187 A.2d 204, 210 (1936).

It is clear from the precedents that a religious organization such as CFRC can be a "benevolent and charitable institution" conducted for "benevolent and charitable purposes." See for example *Town of Poland v. Poland Spring Health Institute*, 649 A.2d 1098 (Me. 1994) involving medical care, *Episcopal Camp*, involving summer camps, *City of Lewiston v. Marcotte Congregate Housing, Inc.*, 673 A.2d 207 (Me. 1996) involving housing for the poor and elderly, or *City of Lewiston v. The Salvation Army*, 1998 ME 98, 710 A.2d 914, involving a thrift store. In the Marcotte Congregate Housing case the housing was owned by the Sisters of Charity, a Roman Catholic religious organization. The Law Court noted, at 212, that "... neither MCH's religious purposes nor its corporate affiliation with religious organizations removes it from the purview of the tax exemption statute."

The statute and cases from the Law Court indicate that a religious institution is entitled to an exemption for its house of worship and part of the value of its parsonage, that institutions organized exclusively for benevolent and charitable purposes are entitled to an exemption and that a religious organization can qualify for an exemption for its property, other than its house of worship and parsonage, if it is organized exclusively for benevolent and charitable purposes.

5

In the current case the CFRC main building, which housed its food distribution program, was not taxed by the Town regardless of whether it could have been, despite the conclusion of the Commissioners that only a small portion of the retreat center is used for charitable and benevolent purposes. The remaining buildings and land are used either to provide facilities for use by religious organizations or to provide rental income to support the use of the facilities by religious groups.

It is ultimately a difficult and close decision to make in this case because the precedents do not appear to provide certainty. Charitable purposes can include bringing the minds or hearts of people under the influence of religion, but a purpose of granting the exemption is to recognize that the benevolent and charitable institution has provided a secular benefit by providing something that government would otherwise provide. Additionally, it must be clear that the organization comes unmistakably within the spirit and intent of the act creating the exemption.

The statute and cases suggest that the following rule should apply. A religious organization is entitled by statute to the specified exemption for its church and the partial exemption for housing for its minister. A religious organization can obtain the additional exemption for benevolent and charitable institutions if it provides services such as housing for the poor, medical care, low cost clothing or food for the poor that government would or should otherwise provide. When a religious organization provides services other than those that government would provide it remains a religious organization, but no longer also qualifies as a benevolent and charitable institution for purposes of obtaining an additional tax exemption. Government is not in the business of renting facilities to churches at low cost and while that ministry is a noble one it is for a religious purpose not exclusively for a benevolent and charitable purpose. See *Pentecostal Assembly of Bangor v. Maidlow*, 414 A.2d 891, 4 (Me. 1980). If a

religious organization performs an act of charity which also meets a need which government programs or services address, then an exemption is warranted. If the religious organization instead meets a religious need which government cannot and should not meet, then an exemption is not warranted.

The plaintiff has also argued that the denial of the requested exemption would violate the provision in 36 M.R.S.A. §652(1)(A) that, "Such institution may not be deprived of the right of exemption by reason of the source from which its funds are derived or by reason of limitation in the classes of persons for whose benefits such funds are applied." Here the deprivation of an exemption would not be because the people who benefited had a particular religious view rather the denial would occur because the use of the facilities did not meet the definition of a benevolent and charitable purpose.

It was also argued that at least the caretaker's house should be exempt. While it is true that there is no explicit restriction on exemption for employee housing for benevolent and charitable institutions, unlike the prohibition on an exemption for employee housing for literary and scientific institutions, see 36 M.R.S.A. §652(1)(B), and *Christian Schools, Inc. v. Town of Rockport*, 489 A.2d 513, 515 (Me. 1985) the caretaker's house should only be exempt if either all the property is exempt or, at least, the main building is exempt as a benevolent and charitable institution. While the main building was not taxed the reason for that exemption has not been stated. The Commissioners did conclude that "Only a small portion of the Christian Fellowship & Renewal Center's retreat center is used for this (food distribution) charitable and benevolent purpose." Therefore, the argument that the caretaker's building should receive an exemption incidental to the food distribution activity in the main building fails. See *State YMCA v.*

*Winthrop* at 443 which might support the plaintiff's claim if the main building had been exempt because of the food distribution program based there.

As the plaintiff has not sufficiently established that it is entitled to an exemption, which is an exception and not the rule, the entry is:

> Decision of the York County Commissioners of January 7, 2004 denying the requested property tax abatement is affirmed.

Dated:     October 25, 2004

Paul A. Fritzsche
Justice, Superior Court

PLAINTIFF:

STEPHEN C. WHITING, ESQ.
THE WHITING LAW FIRM
75 PEARL ST, SUITE 207
PORTLAND, ME   04101

DEFENDANT:

BRUCE A MCGLAUFLIN ESQ
PETRUCCELLI MARTIN & HADDOW
PO BOX 17555
PORTLAND ME   04112-8555