HOLBROOK ISLAND SANCTUARY
*vs.*
THE INHABITANTS OF THE
TOWN OF BROOKSVILLE, ET AL.

Hancock.    Opinion, November 16, 1965.

*Hale & Hamlin, By: Atherton Fuller,* for Plaintiff.

*Eaton, Peabody, Bradford and Veague, By: Arnold L. Veague,* for Defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, MARDEN, RUDMAN, JJ. SULLIVAN, J., sat at argument but retired before the opinion was adopted.

WILLIAMSON, C. J. This is a complaint for a declaratory judgment and other relief designed to establish whether plaintiff's real estate used as a wildlife sanctuary is exempt from taxation by statute. R. S., 1954, c. 91-A, § 10-11 (now 36 M.R.S.A. § 652).[1] The plaintiff Holbrook Island Sanctuary is a corporation without capital stock organized under R. S., c. 54, § 1 (now 13 M.R.S.A. § 901) "or for any . . . scientific, . . . charitable, . . . or benevolent purpose; . . ."

---

[1] "§ 652. **Property of institutions and organizations**

The following property of institutions and organizations is exempt from taxation:

"**1. Property of institutions and organizations.**

"**A.** The real estate and personal property owned and occupied or used solely for their own purposes by benevolent and charitable institutions incorporated by this State, and none of these shall be deprived of the right of exemption by reason of the source from which its funds are derived or by reason of limitation in the classes of persons for whose benefit such funds are applied."

\* \* \* \* \* \* \* \* \*

"**B.** The real estate and personal property owned and occupied or used solely for their own purposes by literary and scientific institutions.

"**C.** Further conditions to the right of exemption under paragraphs A and B are that:

"(1) Any corporation claiming exemption under paragraph A shall be organized and conducted exclusively for benevolent and charitable purposes; . . ."

The defendants are the Inhabitants of the Town of Brooksville, and the assessors and tax collector of the town for the year 1963. While the action in terms tests the assessment and taxation of the real estate in 1963, the purpose is to determine its taxable status as well for the future under like laws and like circumstances. In the Superior Court the defendants moved to dismiss the complaint on two grounds: First, that plaintiff had not filed a true and perfect list of all its assets, real and personal, not by law exempt from taxation on April 1, 1963; and secondly, that there is no allegation of a written request for abatement or denial of application for abatement. R. S., 1954, c. 91-A, §§ 34, 48 (now 36 M.R.S.A. §§ 706, 841).

The motion was dismissed and subsequently the parties joined in an agreed statement of facts and a request granted in the Superior Court that the case be reported to the Law Court for "such decision as the rights of the parties require." We consider that the defendants in agreeing to a report of the case waived any claim of error in the refusal of the court to dismiss the complaint.

The case is before us on the merits, not on appeal from adverse rulings below. No jurisdictional issue was raised by the motion, which indeed begs the very question whether the property was exempt from taxation. If exempt, there was no necessity of filing the list and seeking an abatement, or of paying the tax and then suing to recover, although such procedures have been followed. *Stockman* v. *South Portland,* 147 Me. 376, 87 A. (2nd) 679 (recovery of taxes paid) ; *Green Acre Baha'i Inst.* v. *Eliot,* 150 Me. 350, 110 A. (2nd) 581; 159 Me. 395, 193 A. (2nd) 564 (denial of abatement).

We need not consider what interest the assessors of 1963 and the tax collector of 1963 presently have in the case. It is sufficient that the defendant town has an interest. Counsel at oral argument agreed that the taxes for 1963, 1964,

and 1965 will be governed by our decision. The action comes within the principles governing declaratory judgments. R. S., 1954, c. 107, § 50 *et seq.* (now 14 M.R.S.A. § 5951 *et seq.*). See Borchard, Declaratory Judgments (2d ed. 1941) p. 844.

From the agreed statement of facts we find:

The corporate purposes of Holbrook Island Sanctuary, as amended in January 1963, are:

> "Charitable, educational and benevolent purposes, to wit: to acquire by gift, purchase, lease or otherwise real estate within the State of Maine and personal property; to set aside an area or areas to devote the same to the preservation and protection of and the prevention of cruelty to such wild birds and beasts as may come thereon; to maintain facilities for their feeding and shelter; to preserve the unspoiled natural beauty of said areas; to expend moneys for the prevention of cruelty to animals, for the furtherance of humane education and for any or all other purposes connected therewith which shall be conducive to the welfare of animals and wildlife, whether on land owned by the corporation or not; to accept gifts of personal property; to accept and receive donations of money, general legacies and devises of real estate to be used for the foregoing purposes; provided, however, that the corporation shall not be conducted for gain or profit, and that no part of the net earnings shall inure to the benefit of any member upon dissolution of the corporation or otherwise, but shall always be devoted to the aforesaid charitable purposes; to sell, mortgage, lease or convey any and all real and personal property acquired as aforesaid, and doing and performing all things in connection therewith or incidental thereto in carrying out the foregoing purposes."

The real estate in the plaintiff's sanctuary "comprises approximately eleven hundred acres of uninhabited wild-

lands in the Harborside section of Brooksville, heavily wooded and containing in excess of one mile of waterfront property bordering the waters of Penobscot Bay, . . . The only building on the land which is presently used for any purpose is a small single-story three room structure used as an office and housing a small library of books on nature and conservation belonging to the corporation."

\* \* \* \* \* \* \* \* \* \* \*

"As of April 1, 1963, said real estate of Holbrook Island Sanctuary was used in the following manner: The entire area was left in its natural state for the protection and preservation of animal, bird, tree and plant life within its boundaries. Roads for the passage of vehicles were within the area but it is intended that existing roads (except for the *r*own road) be permitted to grow back to their natural state. Several old cemeteries exist within the area and the access roads to these are presently blocked by felled trees and fences. Present inhabitants of the town have relatives buried in these cemeteries. These roads have been used by the public for over 100 yrs. A minimum of footpaths were and will be maintained for the purposes of fire patrol and study and observation by persons admitted to the area accompanied by the warden. The area was posted with signs reading 'WILD LIFE SANCTUARY NO DOGS OR FIREARMS ALLOWED.' The corporation employed a full-time Warden (not a member of the Warden Service but a Constable appointed by the Town) with an additional helper during the summer months and the hunting season. All persons wishing to enter the sanctuary were and are asked to register at the office and to apply to the Warden for permission to enter the sanctuary. Persons and organizations engaged in nature study were permitted in the Sanctuary accompanied by the Warden for the purpose of nature study, observation and photography. The public was directed not to enter the sanctuary for any other purpose. The Warden and his assistant were instructed to prohibit

hunting in the area. The Warden kept a census of animal and plant life within the area and is instructed to make regular patrols of the area to prevent fire. The policy of the corporation was and is, in general, that there be no interference with the balance of nature. Therefore, even restricted hunting, of the game management type now favored by the Maine State Department of Inland Fisheries and Game, is prohibited. The corporation provided and will provide hay, salt and other foods for the animal population and grain for the birds. A number of bird-feeding stations have been established."

\* \* \* \* \* \* \* \* \* \* \* \*

"The valuation of the properties presently owned by the Holbrook Island Sanctuary amounts to $43,840.00, producing a tax of $920.64. The deletion of the Holbrook Island Sanctuary property from the tax rolls as tax exempt would result in approximately 30c per thousand increase in taxes to the residents of the Town."

The entire property was given to the plaintiff in 1963 by Miss Anita Harris of Brooksville who with her sister had acquired it between 1939 and 1963. On the death of her sister in 1962, Miss Harris decided to make plans for the wildlife sanctuary during her life. Her attorneys and financial advisers advised her (1) to create the plaintiff corporation; (2) that the gift of the real estate would be income tax deductible; (3) that the real estate would be exempt from local taxation, and (4) that additional property would be exempt from estate and inheritance tax. Miss Harris was in part motivated by the advice relating to tax exemption. Her motive, we point out, is not material in reaching our decision. *Camp Emoh Associates* v. *Inhabitants of Lyman,* 132 Me. 67, 166 A. 59.

The plaintiff has received no money or property from any sources other than Miss Harris and a trust created by her for its benefit. Except for certain cutting of wood in

1960-62, "the area has, in general, remained unchanged over the past twenty-five years." The plaintiff will receive the proceeds from wood cut since its organization in 1962.

"The funds of the corporation have been used for the following purposes relating to the land in Brooksville, namely: Payment of wages and travel expense to the Warden and assistants; surveying and blueprinting; constructing and painting signs; purchase of salt, hay, feed and bird seed; employment taxes on employees; construction of bird-feeding stations; office repairs; insurance permiums for liability and fire insurance; and legal fees in organizing the corporation and acquring the real estate."

\* \* \* \* \* \* \* \* \* \* \* \*

"At or about the time that this property was transferred to the Sanctuary, Anita Harris, President of Holbrook Island Sanctuary, contacted the Maine Fish and Game Department seeking cooperation in the control of hunting in the area. Mr. J. William Peppard, Regional Game Biologist, of the Department, came to Brooksville and inspected the premises. He was and is familiar with the policies of the Department. He advised the officers of the Sanctuary that it was the policy of the State not to acquire or accept any properties to be operated as a game sanctuary or a game preserve; that the State prefers to operate game management areas in which the animals are protected but the deer population, from time to time, in the discretion of the Department, may be reduced by killing some of the animals; that the experience of the Department has been that, unless the deer herd in a given sanctuary or preserve is periodically reduced, the animals tend to increase to a point where the food supply is insufficient, resulting in the starvation of some animals; and that consequently the State prefers to be able to reduce the number of deer on a scheduled program which cannot be done in a sanctuary of this type."

The plaintiff contends that it is either a benevolent and charitable or a scientific institution, and is tax exempt in

whichever category it may belong. The burden of establishing tax exemption is upon the plaintiff. "Exemption is a special favor conferred. The party claiming it must bring his case unmistakably within the spirit and intent of the act creating the exemption." *Bangor* v. *Masonic Lodge,* 73 Me. 428. See also *Green Acre Baha'i Institute* v. *Eliot, supra; Camp Emoh Associates* v. *Inhabitants of Lyman, supra.*

The purpose in the plaintiff's charter in which we have a particular interest reads: ". . . to set aside an area or areas and to devote the same to the preservation and protection of and the prevention of cruelty to such wild birds and beasts as may come thereon; to maintain facilities for their feeding and shelter; . . . " The meaning of the charter provision may be gathered from the action of the corporation. It has acquired, as we have said, by gift eleven hundred acres of uninhabited wild land with a mile frontage on the Atlantic Ocean at Brooksville. It uses the land as a game preserve with restrictions more stringent in the protection of game than would be the case in a game preserve created by the Legislature. The public use of the area is limited to persons and organizations engaged in nature study.

We accept the contention of the plaintiff that the corporation purposes include the creation and maintenance of a game preserve with the conditions and limitations expressed in the agreed statement.

In determining whether the plaintiff is a benevolent or charitable institution under the tax exemption statute, we need give no consideration to the word "benevolent." In the leading case *Bangor* v. *Masonic Lodge, supra,* the court said, at p. 433:

> "The statute upon which the defendants rely, uses the word benevolent, but there is no question that this word, when used in connection with char-

itable, is to be regarded as synonymous with it and as defining and limiting the nature of the charity intended."

We conclude that the purposes so stated are not "charitable" within the meaning of the word in the tax exemption statute. First, the interested parties here endeavor to place in the ownership of a tax exempt corporation nothing in substance more than a game preserve. The purpose is plainly to benefit wild animals. We find no benefit to the community or to the public in the proposed sanctuary within the principles relating to charitable trusts involving animals.

The general rule relating to charitable trusts other than those for the relief of poverty, advancement of education and religion, promotion of health, and governmental or municipal purposes is found in Restatement, Trusts (2nd) § 374, as follows:

"Promotion of Other Purposes Beneficial to the Community. A trust for the promotion of purposes which are of a character sufficiently beneficial to the community to justify permitting property to be devoted forever to their accomplishment is charitable."

\* \* \* \* \* \* \* \* \*

"c. **Relief of animals.** A trust to prevent or alleviate the suffering of animals is charitable. Thus, a trust for the prevention of cruelty to animals, or a trust to establish a home for animals, or a trust for the prevention or cure or treatment of diseases or of injuries to animals, is charitable."

In England the Court of Appeals in *Re Grove-Grady* (1929), 1 Ch. 557, 66 A.L.R. 448 with annotation, held, with one justice dissenting, that a bequest in trust for a sanctuary for animals and birds could not be sustained as a valid charitable trust. The court found lacking therein that benefit to mankind which must appear in a charitable trust. Lord Justice Russell said, at 66 A.L.R. 463:

"Assuming that I have correctly interpreted object No. 1, it comes down to this, that the residuary estate may be applied in acquiring a tract of land, in turning it into an animal sanctuary, and keeping a staff of employees to ensure that no human being shall ever molest or destroy any of the animals there. Is that a good charitable trust within the authorities?

"In my opinion it is not. It is merely a trust to secure that all animals within the area shall be free from molestation or destruction by man. It is not a trust directed to ensure absence or diminution of pain or cruelty in the destruction of animal life. If this trust is carried out according to its tenor, no animal within the area may be destroyed by man no matter how necessary that destruction may be in the interests of mankind or in the interests of the other denizens of the area or in the interests of the animal itself; and no matter how painlessly such destruction may be brought about. It seems to me impossible to say that the carrying out of such a trust necessarily involves benefit to the public."

In *R.S.P.C.A., New South Wales* v. *Benevolent Society of N.S.W., et al.*, 33 A.L.J.R. 436 (1960), the High Court of Australia held "(t)hat the requirement that a small area of suburban land near the sea coast should be made accessible to birds and that there should be food and water for them did not come with the principles on which trusts for the benefit of animals were held charitable, and was void."

For unfavorable comment on *Re Grove-Grady, supra,* see IV Scott on Trusts § 374.2 (2d ed.) and Bogert Trusts § 379, p. 188 (2d ed.).

The purposes of the Holbrook Island Sanctuary are not limited to the prevention of cruelty to animals. *Massachusetts S.P.C.A.* v. *City of Boston* (Mass.), 6 N.E. 840; *Pitney* v. *Bugbee* (N.J.), 118 A. 780 (S.P.C.A.); 15 Am. Jur. (2nd) *Charities* § 88.

The plaintiff is not engaged in research or disease control. In *The University of London* v. *Yarrow* (1857), 1 De Gex and Jones's Reports 57, 44 Eng. Reprint 649, the Court of Appeal in Chancery [to quote the headnote] held: "A bequest to a corporation for founding, establishing, and upholding an institution within a mile of Westminster, Southwark, or Dublin, for studying and endeavoring to cure maladies of any quadrupeds or birds useful to man, held a good charitable bequest. . ."

The purposes here are not those of the New Jersey Corporation, of which the court said:

> "We, therefore, hold that when, as here, the purposes of a non-profit corporation are to conserve game birds, to establish hatcheries, refuges and to teach vermin control, those purposes are charitable purposes."
>
> *More Game Birds in America, Inc.* v. *Boettger* (N.J.), 14 A. (2nd) 778, 780.

The instances we have mentioned in each of which the charitable purpose plainly appears, differ widely in our view from the case at bar. We conclude that the community, that is to say the public, does not benefit from the proposed game preserve within the requirements of the established law relating to charitable trusts.

Furthermore, the public policy of the State prohibits the classification of the declared purpose as charitable.

> **"Purpose contrary to public policy.** A trust for a purpose the accomplishment of which is contrary to public policy, although not forbidden by law, is invalid. Thus, a trust to establish a course of lectures in a medical school in which a theory of treatment of disease should be taught which has been proved to be dangerous, is invalid."
>
> Restatement, Trusts (2nd) § 377, comment c.

The control of wildlife rests with the State. "There can be no question of the right of the State to conserve, protect

and regulate its wild life. . . . The results of proper and efficient wild life conservation in large measure promote the economic welfare and well-being of the citizenry of the State. One of the most important and effective means of wild life conservation is the medium of the game preserve established and regulated by legislative enactment." *State of Maine* v. *McKinnon*, 153 Me. 15, 18, 133 A. (2nd) 885.

The State may establish game management areas and for this purpose may acquire or lease land.[2]

The Legislature has designated a long list of areas as sanctuaries and preserves, and has authorized for example temporary game preserves, state game farms, and cooperative action with the Federal Government in wildlife restoration projects.[3] The inclusion of one's land in a game preserve is not a taking of property. *State of Maine* v. *Mc-*

---

[2] 12 M.R.S.A. § 1901

"7. **Game management.** 'Game management' is the art or science of producing wild animals and birds and of improving wildlife conditions in the State. It may specifically include the following:

"A. Regulation of hunting, fishing and trapping;

"B. Environmental controls (control of water, food or cover, special features and animal diseases);

"C. Research or investigations to provide a basis for sound management in Maine;

"D. Manipulation of hunting pressure;

"E. Establishment of game lands (parks, forests, refuges, game management areas, etc.);

"F. Predator control;

"G. Artificial replenishment (game farming and restocking);

"H. Introduction of exotic species of wild animals or birds where needed.

"8. **Game management area.** A 'game management area' is any tract of land or body of water owned or leased by the department of Inland Fisheries and Game for the purposes of game management as defined in subsection 7 or created by an Act of the Legislature."

[3] 12 M.R.S.A. § 2101 *et seq.* (Chap. 309 — entitled "Sanctuaries and Preserves").

"§ 2101. **Designation of preserves and sanctuaries**

"No person shall, except as provided, at any time, trap, hunt, pursue, shoot at or kill any wild animal or any game or other wild birds within the following described territories: . . ."

*Kinnon, supra.* The State may where it will and when it will prohibit hunting on any land within the State. We are satisfied, therefore, that it is the policy of the State and not the wish of the individual which controls the protection and preservation of the wildlife of our State.

Operating under its stated charter purposes, the plaintiff seeks to create a game preserve or at most a game management area with conditions deemed harmful by the regional game biologist of the Fish and Game Department. The Holbrook Island Sanctuary in face of this expert opinion adverse to its desires seeks an exemption from the normal support of government. Such a purpose may not be called a charitable purpose. It follows that the plaintiff is a corporation not "organized and conducted exclusively for benevolent and charitable purposes" within the meaning of the tax statute Section 652, note 1, *supra,* and accordingly is not entitled to tax exemption.

The plaintiff urges that it is a scientific institution and is thus entitled to tax exemption. We are fully satisfied that the purposes for which the plaintiff was organized and to which its property was exclusively devoted are not scientific within the meaning of Section 652, note 1, *supra.* The purpose of the corporation was to establish a game preserve, as we have stated above. The availability of the area for nature study, observation and photography, the small library of books on nature and conservation, and the census of animals by the warden, are uses too small on which to place the plaintiff in the ranks of scientific institutions. Such uses are only incidental to the main object of the plaintiff.

The property in question is subject to taxation by the town.

The entry will be

*Remanded for entry of a decree in accordance with this opinion.*