2001 ME 149

**CUSHING NATURE AND
PRESERVATION
CENTER**

v.

**TOWN OF CUSHING et al.**

Supreme Judicial Court of Maine.

Argued:  Sept. 14, 2001.
Decided:  Oct. 29, 2001.

William H. Dale (orally), Sally J. Daggett, Jensen Baird Gardner & Henry, Portland, for plaintiff.

---

\* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned

Daniel J. Mitchell (orally), Lee K. Bragg, Joan M. Fortin, Bernstein Shur Sawyer & Nelson, P.A., Portland, for defendant.

Karin F. Marchetti, Land Conservation Legal Services, Bernard, for amicus curiae, Maine Coast Heritage Trust.

Panel: WATHEN, C.J.,\* and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] The Cushing Nature and Preservation Center appeals from a judgment of the Superior Court (Knox County, *Atwood, J.*) denying its motion for summary judgment and granting a summary judgment in favor of the Town of Cushing on the Center's action for a declaratory judgment. The Center argues that its property qualifies for a charitable property tax exemption pursuant to 36 M.R.S.A. § 652(1) (1990 & Supp.2000) and is entitled to a refund of taxes paid in 1998 and 1999. We conclude that there are material facts in dispute and vacate the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] The facts set forth in the parties' opposing statements of material fact may be summarized as follows. The Cushing Nature and Preservation Center was incorporated pursuant to the Maine Nonprofit Corporation Act, 13–B M.R.S.A. §§ 101–1405 (1981 & Supp.2000). According to its articles of incorporation, the Center was:

organized for one or more of the following purposes as specified in Section 501(c)(3) of the Internal Revenue Code

before this opinion was adopted.

of 1986, including to own, operate and preserve land as a nature center and/or center for programs for environmental education, and shall not carry on any activities not permitted to be carried on by an organization exempt from federal income tax under IRC 501(c)(3) or corresponding provisions of any subsequent tax laws.

The IRS made a preliminary determination that the Center is exempt from federal income tax. The Center, whose president is Dr. Nile Albright, has four officers and a three-person board of directors, none of whom are compensated for their services. The directors of the Center are also directors of another corporation run by Dr. Nile Albright, Advanced Medical Research Foundation. AMRF formerly owned the two Cushing lots. While owner of the two lots, AMRF sought and was denied tax exempt status. *See Advanced Med. Research Found. v. Town of Cushing*, 555 A.2d 1040, 1042 (Me.1989).

[¶ 3] In February 1998, the Center acquired the two lots from Advanced Medical Research Foundation. The lots comprise 400 acres and are valued at roughly 2.5 million dollars. There is a farmhouse on the property, as well as a barn that purportedly serves as a nature center. The barn contains an administrative area on the second floor and remains locked except for special functions. No regular electricity service has been provided to the property since July 1998. In 1998 and 1999, the Center had a volunteer part-time manager,

who was also employed full-time by AMRF.

[¶ 4] The Center generally makes the property available to the public. The Town, however, asserted in its statement of material facts that clamming is prohibited on the property. The record is unclear as to what portion of the property clammers are prohibited from using. The Center now contends that it discourages clammers from *crossing* the property, but that it does not prohibit them from clamming in the intertidal zone.[1] It is undisputed that clamming in fact occurs on the property.

[¶ 5] The Center alleges that several nature-related educational programs took place on the property in 1998 and 1999. In both years, the property was used for the Cushing Nature Center Science Camp for Girls (CNCSCG), a program "designed to promote interest and enthusiasm in science by girls, to develop self-esteem and leadership, and for them to meet women scientists and role models." Each year approximately twenty girls stayed overnight at the property for six days and participated in a variety of educational and recreational activities. Whether the Center conducted or operated the camp is in dispute.

[¶ 6] The Center also alleges that it made its property available for several other endeavors related to nature education. MSAD # 50 ran a four-day science day camp on the property in the summers of 1998 and 1999 as part of its state-funded summer science program.[2] The Knox

---

1. Believing that the issue of clamming was irrelevant to the decision before the court, the Center presented no fact in opposition to the Town's statement of material fact on that point. Thus, we accept the Town's assertion to the extent that it is supported by the record reference. The record referred to was Dr. Albright's deposition, in which he said in response to the question of whether clamming was permitted: "No. And we've posted it such

and, when the clammers come we put a yellow tag beneath their windshield saying, this is private property and we'd like you to not use it this way and not dispose of any trash."

2. MSAD # 50 executed a release of liability, was encouraged to provide its own bathrooms, supplies, food, and cellular phones, and was advised not to use the barn unless it rained. The Center made contributions to the

County Boy, Girl, and Cub Scouts used the property for camping for three days in September 1998. The Girl Scouts also held a camporee on the property over a weekend in May 1999. In both cases, the scouts provided their own shelter, bathrooms, supplies, food, and telephone, and were able to use the barn only in the event of rain. In 1998, the scouts conducted a coastal clean-up on the property. Nature walks have been conducted on the property, and Maine Medical Center used the property to study the relationship between deer density and Lyme disease. The Cushing Historical Society marked burial sites of Native Americans and early settlers on the property in 1998. In June 1999, a fifth grade class took a one-hour nature hike on the property.[3]

[¶ 7] The Town assessed taxes against the combined properties of $18,245.36 in 1998 and $18,981.06 in 1999. The Center requested that the Town Board of Assessors exempt its property from municipal property taxes for 1998 and 1999 pursuant to the provisions of 36 M.R.S.A. § 652(1)(A). The Board denied that request.

[¶ 8] The Center then filed a complaint seeking a declaratory judgment that its real property qualifies for tax exempt status and that it is entitled to a refund of the taxes paid. The Superior Court denied the Center's motion for summary judgment and granted a summary judgment for the Town. The court concluded that the Center's restrictions on access by clammers is contrary to public policy, thereby precluding the Center from claiming an exemption. The court also concluded that because of the existence of the Farm and Open Space Tax Law, 36 M.R.S.A. §§ 1101–1121 (1990 & Supp.2000), land conservation cannot be considered a charitable purpose pursuant to 36 M.R.S.A. § 652(1)(A). This appeal followed.

## II. DISCUSSION

[¶ 9] On appeal from a grant of summary judgment, we consider only those portions of the record referred to and the material facts set forth in the M.R. Civ. P. 56(h) statements "to determine whether there was no genuine issue as to any material fact and that the successful party was entitled to a judgment as a matter of law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655; *Stanton v. Univ. of Me. Sys.*, 2001 ME 96, ¶ 6, 773 A.2d 1045, 1048. We examine the facts in the light most favorable to the nonprevailing party. *Mastriano v. Blyer*, 2001 ME 134, ¶ 10, 779 A.2d 951, 953–54.

[¶ 10] Whether an organization's real property qualifies for a charitable tax exemption is a mixed question of law and fact. *See Episcopal Camp Found., Inc. v. Town of Hope*, 666 A.2d 108, 110–111 (Me. 1995). First, the court must determine whether a stated purpose is charitable within the meaning of the statute creating the exemption. *See id.* Statutory interpretation involves questions of law that

camp of $480 in 1998 and $550 in 1999. MSAD # 50 also used the property to conduct a four-day teacher training program in 1998. Whether MSAD # 50 conducted a similar program in 1999 is in dispute.

3. The Town alleges that the property was also used for meetings by the Pathology Department of Penobscot Bay Hospital, the Nurses Association of Penobscot Bay Hospital, the Maine Arthritis Association, the Maine Diabe-

tes Association, the Cushing Historic Society, and a group affiliated with the Drug Abuse Resistance Education program. The Center denies that the Pathology Department of Penobscot Bay Hospital, the Nurses Association of Penobscot Bay Hospital, the Maine Arthritis Association, or the Maine Diabetes Association have met on the property since the Center acquired it.

give rise to de novo review. *Charlton v. Town of Oxford*, 2001 ME 104, ¶ 10, 774 A.2d 366, 371. If an organization's purpose is deemed to be charitable, the court goes on to a careful examination of the facts to determine whether the organization is actually using its property solely for purely benevolent and charitable purposes. *Episcopal Camp Found.*, 666 A.2d at 111 (quoting *Green Acre Baha'i Inst. v. Town of Eliot*, 150 Me. 350, 354, 110 A.2d 581, 584 (1954)).

[¶ 11] Here, the court did not engage in an examination of the facts because it determined first, that the Center was acting contrary to public policy in limiting clammers' access to the property, and second, that one of the Center's stated charitable purposes, land preservation, did not fall within the meaning of a charity for purposes of 36 M.R.S.A. § 652(1)(A). Because we conclude that the limitation on clammers' access to the property does not, by itself, bar the Center from claiming the exemption, and that the Center has set forth an alternative charitable purpose, nature education, we must remand the matter for examination of the facts.

A. Access to Clam Flats

[¶ 12] Although the Superior Court found that clamming is prohibited on the property, the record reference in the Town's statement of material facts is equivocal with respect to whether clamming is actually prohibited in the intertidal zone. The Center agrees that it may not legally prohibit clammers from being upon the intertidal zone of its property because the public enjoys an easement over intertidal land for the purposes of fishing, fowling, and navigation. *Bell v. Town of Wells*, 557 A.2d 168, 173 (Me.1989). It now alleges, however, that it has never flatly prohibited clamming but rather discourages clammers from parking on its upland prop-

erty and from using its roads to access the flats. This does not appear to be in dispute. Nonetheless, the Superior Court held that the Center's interference with clamming violates public policy.

[¶ 13] When the *purpose* of an alleged charitable use violates public policy, it cannot be classified as charitable. *See Holbrook Island Sanctuary v. Town of Brooksville*, 161 Me. 476, 486–88, 214 A.2d 660, 666 (1965). This does not mean, however, that a charity may not lawfully restrict the use of its property. If the use is charitable, the owner need not allow all public uses in order to qualify for an exemption. Here the Center alleges a charitable purpose of nature education. If it does, in fact, use the property solely for that purpose, it may exclude others not involved in that purpose from access to the property without jeopardizing the property's tax exempt status. Clammers using the property to park trucks and gain access to the flats are engaged in commercial activities, not nature education. Thus, excluding clammers from using the upland portion of the property would not preclude the Center from seeking a charitable exemption.

B. Educational Purposes

[¶ 14] The Superior Court also concluded that land preservation cannot constitute a charitable use for purposes of 36 M.R.S.A. § 652 because the Legislature has provided a specific method of obtaining favorable tax treatment of preserved lands through the Farm and Open Space Tax Law, 36 M.R.S.A. §§ 1101–1121.

[¶ 15] The Center has not presented any facts in support of a claim that it has engaged in land conservation or preserved the land for future public use. Thus, we need not determine whether land conservation or preservation, standing alone, could constitute a charitable use, and the

Superior Court did not err in entering judgment for the Town on that claim.

[¶ 16] The Center has, however, presented facts in support of its alternate claim that it currently uses the land exclusively for the charitable purpose of educating youth and the public regarding science and nature. We have recognized that education may constitute a charitable purpose. *See Episcopal Camp Found.*, 666 A.2d at 110. Thus, we must determine whether the Center has presented sufficient facts regarding its educational charitable purposes to preclude the entry of a summary judgment in favor of the Town.

[¶ 17] In determining whether an organization's property qualifies for a charitable tax exemption, we have identified several factors the trial court should consider. When an exemption is claimed, the court must undertake a "careful examination" of the facts presented to determine (1) whether the owner of the land is organized and conducting its operation for purely benevolent and charitable purposes in good faith; (2) whether there is any profit motive revealed or concealed; (3) whether there is any pretense to evade taxation; and (4) whether any production of revenue is purely incidental to a dominant purpose that is benevolent and charitable. *Green Acre Baha'i Inst.*, 150 Me. at 354, 110 A.2d at 584. This does not represent an exhaustive list of considerations, but it will guide the court in its determination of the existence of a charitable use.

[¶ 18] Here, there is apparently no factual dispute that the Center is organized as a charitable corporation or that it allows occasional educational events to occur on the property. The dispute centers on the Town's contention that the land is actually held for noncharitable investment or other noncharitable purposes. The Town has presented facts in support of that contention. Thus, the trial court must determine whether the claimed charitable use is the sole use of the land, whether the charitable uses are conducted in good faith, and whether there exists a pretense to evade taxation.

[¶ 19] Because of its legal rulings, the court did not reach an analysis of the disputes of fact material to the Center's use of its land, including the extent of the Center's educational uses, its involvement with the Science Camp for Girls, and the extent of its noncharitable uses of the land, including noncharitable investment purposes. We therefore vacate the judgment in favor of the Town and remand the matter to the Superior Court for resolution of the factual disputes relevant to the Center's alleged charitable use of the property for nature and science education.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.